**In re KEY ENERGY ENTERPRISES, INC. and Key Stop, Inc., Debtor.**

**Bankruptcy Nos. 86–602–BKC–8P1, 86–603–BKC–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

May 3, 1988.

D. Massari, Tampa, Fla., for debtors.

Shirley Arcuri, Tampa, Fla., for movant.

## ORDER ON AMENDED MOTION FOR ADMINISTRATIVE CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a consolidated Chapter 11 case involving two Debtors, Key Energy Enterprises, Inc. (Key Energy) and Key Stop, Inc. (Key Stop). The matter under consideration is an Amended Motion for Administrative Claim filed by B P Oil, Inc. (B P Oil). The procedural background of this Motion and the events preceding, to be charitable, is laden with a comedy of errors and it is utterly confusing and, unfortunately, requires a detailed analysis of the pertinent facts in order to really focus on the one and only issue which is whether or not B P Oil is entitled to an allowance of an administrative claim under § 503 of the Bankruptcy Code based on an alleged breach of an assumed, unexpired non-residential lease by Key Stop, one of the Debtors involved in the consolidated Chapter 11 case.

The facts relevant and germane to the resolution of the question as appear from the record of this Chapter 11 case and from the evidence presented at the final evidentiary hearing are as follows:

On May 19, 1965, Gulf Oil Corporation (Gulf Oil) entered into a ground lease with Horne's Enterprises, Inc. (Horne's) (B P Oil's Composite Exhibit #1) covering certain parcels of real estate located at Ellisville, County of Columbia, State of Florida. The improvements on the property consisted of the customary service station facilities combined with a restaurant operation owned by Horne's. It appears that Horne's assigned its ground lease to Key Stop on April 17, 1980 (B P Oil's Composite Exhibit #1). Although it is not clear, Key Stop may have operated the facility for a while but due to low volume of business, in November, 1984, Gulf Oil and Key Stop entered into an agreement (Debtor's Composite Exhibit #3) under which the parties agreed that they would mutually cancel the ground lease. Gulf and Key Stop further agreed that the property, not only the land owned by Gulf but also the improvements owned by Key Stop, will be sold and Key Stop would receive $19,000 for the buildings, improvements and petroleum marketing equipment upon closing the sale. In addition to a written offer submitted by Gulf Oil and accepted by Key Stop on November 5, 1984 (Debtor's Composite Exhibit #3), the parties also executed a formal document titled "Mutual Cancellation and Release". It is without dispute that Gulf Oil in fact procured a contract for the sale of the land and the improvements.

On January 9, 1985, Gulf Oil conveyed its interest in the land to B P Oil. This transaction carried over the previous arrangements made by Gulf Oil with Key Stop covering the sale of the personal chattels owned by Key Stop and the agreement to pay Key Stop for the improvements it owned when the property was sold. It appears that in mid–1985 the building was damaged by fire and as a result the proposed sale aborted.

On February 20, 1986, Key Stop and its sister corporation, Key Energy, filed their respective Petitions for Relief under Chapter 11. On April 16, 1986, counsel for the Debtors filed a Motion to Assume the

Lease of an unexpired, non-residential property, i.e. the real property in Ellisville, notwithstanding the fact that the ground lease was, without question, effectively terminated by the agreement of the parties as far back as 1984. To compound the error, B P Oil, although properly served with the Motion, did not take a position on the Debtor's Motion and on September 25, 1986 this Court entered an ex parte Order and authorized the Debtor to assume the ground lease of the Ellisville location.

On July 30, 1986, B P Oil filed a Motion and sought relief from the automatic stay. In its Motion, B P Oil alleged that the ground lease was effectively terminated by its own terms in August, 1985 (sic) and since the property was damaged by fire and because of the failure of Key Stop to pay rent, B P Oil should be authorized to proceed without any further interference from the bankruptcy court to enforce its rights concerning the subject property and regain possession of the Ellisville property. On August 20, 1986, counsel for Key Stop filed a response to B P Oil's Motion in which it was alleged that the original ground lease was "modified by the terms of an agreement in writing and by oral agreement (sic)" between the parties; that while Key Stop conceded that it was duty bound to pay rent, contended that the rent was to be paid to B P Oil only from the proceeds of the sale if and when the property was sold and that Key Stop had no current obligation to pay rent. Based on the foregoing Key Stop contended that the stay should remain in full force and effect until the property was sold. On September 8, 1986, this Court entered an Order and extended the automatic stay and scheduled the final evidentiary hearing on B P Oil's Motion for Relief from Stay.

It appears that prior to the scheduled final evidentiary hearing on the Motion for Relief from Automatic Stay, counsel for B P Oil, representatives of B P Oil, and counsel for Key Stop met in the office of counsel for Key Stop with the representatives of Key Stop to discuss the matter. While all parties agree that such meeting occurred, there is a violent disagreement as to what actually transpired at the meeting especially concerning Key Stop's obligation to pay rent, specifically to pay real property taxes on the subject property. Be that as it may, it is without dispute that counsel for Key Stop entered into a stipulation dated September 26, 1986 with counsel for B P Oil. The stipulation provided that the stay should be lifted at once; that the lease agreement between B P Oil, as successor to Gulf Oil, was deemed to be terminated, effective immediately. At this point it should be noted, and as mentioned earlier, that the lease was in fact terminated back in 1984 and based on the Motion for Relief from Stay filed by B P Oil was terminated by its own terms at least as early as August, 1985, or seven months prior to the commencement of the Chapter 11 case. The stipulation further provided that Key Stop shall have 45 days to remove any and all personal property belonging to Key Stop, Inc. from the real property owned by B P Oil. Based on this stipulation of October 3, 1986, this Court entered an Order and granted B P Oil's Motion for Relief from Stay declaring the lease to be terminated effective immediately; granted Key Stop 45 days to remove any and all personal property belonging to Key Stop. Although the Stipulation filed by counsel for B P Oil which was the basis of the Order granting relief from the automatic stay purports to represent the complete agreement reached by the parties at the meeting, it fails to mention in the stipulation any possible administrative rent claim by B P Oil.

On May 21, 1987, B P Oil filed a proof of claim in which it asserted, for the first time, a claim for administrative rent. Having realized that its request by way of a proof of claim was procedurally improper, B P Oil filed an "Amended Motion for Administrative Claim". As the Motion was not opposed by counsel for Key Stop, this Court, on August 10, 1987, entered an order based on a stipulation signed by counsel for Key Stop which directed Key Stop to pay to B P Oil $2,175.87 representing the real estate taxes attributable to the Ellisville property for the years 1985 and 1986. The Order based on the stipulation further

provided that Key Stop will be responsible for any and all taxes accrued through 1986 on the building and improvements estimated to be $3,155.12, and if Key Stop failed to comply with the provisions of the Order and if B P Oil was required to pay the taxes, B P Oil will have an administrative claim for the reimbursement which must be paid by Key Stop as condition precedent to confirmation. More importantly, this Order also provided that B P Oil waived all its rent claims in the amount of $6,000 with the exception of any possible claim it may have against Key Stop for environmental damages to the real estate which might have been caused by the Debtor's installation and maintenance of gas tanks on the real estate. It should noted that at that time there was no claim or evidence concerning any environmental damage to the land and there is still none. It is clear that this provision dealt only with the possible claim which might occur in the future. It also should be pointed out that the Order which waived all administrative rent was prepared and submitted by counsel for B P Oil.

For some unexplained reason, counsel for Key Stop filed a Motion for Rehearing on July 23, 1987, or approximately two weeks before the Order granting B P Oil's Motion was actually entered. It was alleged in the Motion that the provision of the Order dealing with payment of taxes relating to the Ellisville lease which was rejected is not the responsibility of Key Stop, that the parties agreed that in exchange of Key Stop's agreement to give up all its interest in a certain so-called option in the Wildwood purchase, a property not directly involved in this present controversy, the agreement was in fact a mutual release of all rights and obligations of the parties.

On August 17 Key Stop filed a Renewed Motion for Rehearing. In this Motion, counsel for Key Stop, in addition to reiterating the contentions set forth in the previous Motion, also contended that since the taxes in question were assessed pre-petition, even if B P Oil paid these taxes B P Oil would not be entitled to a priority tax claim by virtue of § 507(d) of the Bankrupt-

cy Code and would have more than a general unsecured claim.

On September 29, 1987 this Court entered an Order and granted the Motion for Rehearing filed by Key Stop. On December 8, 1987, Judge Baynes of this Court heard the Motion and entered an Order on the Motion for Rehearing. The Order which was prepared, again by counsel for B P Oil, provided that the previous Order allowing an administrative expense dated August 10 should be vacated; the original Motion for Payment of Administrative Expense should be rescheduled for evidentiary hearing. On March 3, 1988 B P Oil filed an Amended Motion for Administrative Claim in which it sets forth an additional amended claim in the amount of $11,079.79. This amended claim also includes a new claim based on a ground lease concerning the property located in Wildwood, a matter which is not under consideration by this Court at this time.

■ These are the salient facts based on which B P Oil contends that it is entitled to an allowance as cost of administration pursuant to § 503 of the Bankruptcy Code in the total amount of $11,079.79 made up of the following items: $1,012.62 for 1985 real estate taxes; $1,163.25 for 1986 real estate taxes; $5,748.80 for rent from February, 1985 through September, 1985 at the rate of $287.44 per month; and, $3,155.12 for building taxes for the years 1985 and 1986.

It should be noted at the outset that although counsel for both parties repeatedly referred to the ground lease and the assumption of same, this Court is satisfied and it is crystal clear that: first, the ground lease was effectively terminated by agreement of the parties long before the commencement of the Chapter 11 case; second, even though Key Stop filed a meaningless Motion to assume the lease, which was no longer in existence, and in spite of the fact that the Motion was granted with the approval of B P Oil there never was an effective assumption of the ground lease. From the foregoing it is evident that, contrary to the contention of Key Stop, there was never any modification or renewal of

the ground lease either orally or in writing since there was nothing to be modified or renewed. It is equally clear, that it was the understanding of the parties, at least up to a point, that the Ellisville property, including the improvements, would be sold; that Key Stop would not be required to pay any rent on an on-going basis; that when the property was sold, Key would receive $19,000 as payment for the building and the personal properties it owned less the amount of the accrued rent. This agreement of the parties was the only agreement in existence after the parties, by mutual agreement, terminated the ground lease and the same remained the only binding agreement of the parties until they entered into the stipulation in conjunction with the Motion for Relief from Stay filed by B P Oil. According to that stipulation, as noted earlier, it is clear that any lease or previous agreement between the parties was effectively terminated and Key Stop had 45 days from September 26, 1986 to remove any of its personal property from the land owned by B P Oil.

Having concluded that the original ground lease has been effectively terminated by the agreement of the parties long prior to the commencement of this case, this leaves for consideration whether or not the parties agreed that at the meeting prior to the final hearing on the Motion for Relief from Stay filed by B P Oil that they would mutually release each other of any further obligations as contended by Key Stop.

Based on this record, this Court is satisfied first that counsel for Key Stop had no authority to enter into the stipulation which was the basis for the Order lifting the automatic stay; second, it is obvious that it certainly would not have made any economic sense for Key Stop to consent to the lifting of the automatic stay under the terms set forth in the stipulation prepared and submitted by counsel for B P Oil. Contrary to the contention of B P Oil it appears that the improvements, i.e. the building and equipment had substantial value in spite of the fire damage. It is difficult to comprehend that anyone with any sense would give up all the improvements

on the land without receiving anything in return. Even assuming but not admitting that B P Oil did not agree at the meeting to relieve Key Stop of the obligation imposed on Key Stop by the ground lease to pay the rent and the taxes in question, this obligation clearly no longer existed for the simple reason that neither the ground lease which is the basis for this obligation nor the subsequent agreement for the sale of the property existed, having been terminated in conjunction with the entry of the order which removed the automatic stay.

This leaves for consideration the last possible basis for the claim of B P Oil not articulated at all by counsel for B P Oil nor agreed to by counsel for Key Stop. This relates to the question whether or not B P Oil is entitled to an "administrative rent" to be charged as cost of administration pursuant to § 503 of the Bankruptcy Code for the use and occupancy of the real property on which the improvements owned by Key Stop were located.

First, there is nothing in this record even to intimate that Key Stop ever used the premises although it technically may have occupied the land owned by B P Oil. Its occupancy was clearly by agreement of the parties entered into in order to facilitate the sale of the entire property including the improvements owned by Key Stop. It is well established that administrative rent is allowable only as cost of administration as compensation for the reasonable value of the "use and occupancy" by a debtor of a property owned by another. One cannot contend in good faith that property taxes owed the owner of real property represent the reasonable value of the use and occupancy of the land. This being the case, this Court is satisfied that B P Oil is not entitled to any amount to be charged as cost of administration against the estate of Key Stop.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Amended Motion for Administrative Claim be, and the same is hereby, denied.